By the Court.
1. The instruction to the jury first requested on behalf of the accused, was properly refused. Whether the witness, Hover, if he purposely and willfully burned the building in question, although he did so at the request of the general owner, with intent to aid him to defraud *461 the insurer of the building, would nevertheless not be liable to indictment and conviction, under section 12 of the crimes act, for maliciously burning the building of another, is a question which need not now be determined. However that may be, it is clear that his liability could be in no way legally affected’by the .result of the prosecution in the present case. Upon the trial of Hover upon such charge, the fact that Evans had been convicted of the crime with which he is here charged, would be wholly immaterial; and if it be conceded that it would be material for him to show that he did the act at the instance of Evans, it is clear that the record in the present case could not be used by him as evidence of that fact. The question of his guilt or innocence would not depend upon whether Evans had been prosecuted for the crime here imputed to him, nor could the determination of that question be legally affected by the result of such prosecution.
2. The second instruction requested on behalf of the accused was also properly refused. The failure on the part of the state to prove that the insurance company named in the indictment was an incorporated company, presented at most a case of variance between the allegations of the indictment and the proof. It was a variance which, it may be admitted, would have been fatal at common law. Whether such particularity of description was necessary or not, the averment being made, and being descriptive of the alleged insurer of the building, as well as of the party it was alleged the accused intended to defraud, a failure to sustain such averment by sufficient proof would, at common law, have resulted in the ’defeat of the prosecution. But the rules of the common law relating to this subject have been essentially modified by the criminal code. Section 91 is as follows: “ Whenever, on any indictment for any offense, there shall appear to be any variance between the statement in such indictment and the evidence offered in support thereof, in the Christian name or surname, or in both Christian name and surname, or other description of any matter or thing whatsoever therein named or de *462 scribed, such variance shall not be deemed ground for an acquittal of the defendant, unless the court before which the trial shall be had, shall find that such variance is material to the merits of the case, or may be prejudicial to the defendant.”
The jury, under the instructions of the court, must have found that the insurance company named in the indictment was a party capable of entering into a contract of insurance, and that there was, at the time the building was burned, a valid and subsisting contract of insurance between that company and the accused, of the character charged in the indictment. These facts being established, it was wholly immaterial to the merits of the case whether the company named was a corporation or not. The guilt or the innocence of the accused did not at all depend upon that question. The variance referred to, therefore, if there was such variance, did not touch the merits of the case; and it does not appear, and the court before which the case was tried has not found, that it operated, in any way, to the prejudice of the accused.
3. Nor does the action of the court, in allowing leading questions to be put to the witness Sherman, constitute ground for reversal. The state had, by other witnesses, given evidence to show' that the value of the building burned was more than fifty, but not to exceed eight hundred dollars. The defendant, on the cross-examination of Sherman, who had given no testimony in chief as to the value of the building, elicited evidence tending to show the value of the building burned to have been greater than the amount insured.
The purpose of this evidence was to show that the defendant had no motive to commit the ofiense. The testimony of Sherman on the cross-examination was, that, if the building had been finished, it would have been worth from $1,500 to $2,500. The testimony elicited by the questions objected to was calculated to show how this valuation ought to be affected by the character of the materials used in the building.
*463 ■Without conceding the correctness of the ruling, that the defendant, by his examination, had made the witness his own, so as of right to entitle the state to put leading questions, yet the questions allowed, and the evidence thereby elicited, show no cause for reversing the judgment. The allowing or refusing of leading questions in the examination of a witness must very largely be subject to the control of the court, in the exercise of a sound discretion. While we do not say that a case may not arise in which there may be such an abuse of discretion as to deprive the party of a fair trial, and thus call for the interference of this court, it is plain that the present one is not of that character.

Motion overruled.